**2025 BNH 002**     Note:   This is an unreported opinion. Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                 Case No. 25-10052-KB
                                                                                                         Chapter 11
Phoenix Swimming, LLC,
            Alleged Debtor.


*William S. Gannon, Esq.*
*William S. Gannon PLLC*
*Attorney for Stephen Van Der Beken, Petitioning Creditor*

*David P. Azarian, Esq.*
*Azarian Law Office, PLLC*
*Attorney for Alleged Debtor*

# MEMORANDUM OPINION

## I.  INTRODUCTION

The Court conducted a trial on March 18, 2025, pursuant to 11 U.S.C. § 303 to determine the validity of an involuntary chapter 11 petition (ECF No. 1) (the "**Involuntary Petition**") filed by creditor Stephen Van Der Beken (the "**Petitioning Creditor**" or "**Van Der Beken**") against Phoenix Swimming, LLC ("**Phoenix**" or the "**Alleged Debtor**"). At the conclusion of the trial, the Court took the matter under advisement. For the reasons set forth below, the Court concludes that the Alleged Debtor is generally paying its debts as they become due, and for that reason, will dismiss the Involuntary Petition. Alternatively, the Court exercises its discretion to abstain as the interests of the Alleged Debtor and creditors would be best served by dismissal. The Court declines to grant judgment against the Petitioning Creditor and in favor of the Alleged Debtor for costs, attorney's fees, or damages as permitted by 11 U.S.C. § 303(i).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS AND PROCEDURAL HISTORY

Matthew Williams ("**Williams**") formed Phoenix in August 2010 to provide swim coaching services. Ex. 101. Williams is Phoenix's sole member, owner, and manager. Phoenix runs a competitive swim team, which currently has sixty-two swimmers. Phoenix does not own any real estate but instead rents pool facilities at which the Alleged Debtor's coaches train swimmers and conduct swim meets. Its assets consist of swimming blocks, touch pads, a timing system, dry land equipment, laptops, its coaching staff and swimmers, and the company's income stream and goodwill. Swimmers pay monthly or quarterly tuition, some pay for private lessons, and they also pay member dues and league fees. Phoenix's other source of income is fees from hosting swim meets.

Williams and Van Der Beken have known each other for many years. Ex. 108. Van Der Beken coached Williams when Williams was a high school swimmer. Thereafter the two continued their relationship as they both coached swim teams. In 2016, they entered into an agreement whereby Williams, in his individual capacity, purchased a 50% ownership interest in Van Der Beken's swim team business.

In 2021, Van Der Beken sued Williams and Phoenix in the Hillsborough Superior Court Northern District (the "**State Court**") for breach of contract, unjust enrichment, and quantum meruit. In June 2023, Van Der Beken obtained a writ of attachment and trustee process against Williams and the Alleged Debtor with respect to property held by Bank of America. Ex. 106.

After a three-day trial, the State Court found in favor of Van Der Beken, issuing an order on June 2, 2024, requiring Williams to pay Van Der Beken $243,212.00 in damages plus costs. Ex. 3 (the "**Judgment**"). The Judgment further provided that Phoenix would be responsible for a subset of those damages "if they are not paid by Williams."[1] *Id.* In addition, on June 20, 2024, the State Court awarded Van Der Beken attorney's fees and costs totaling $58,603.48. Ex. 4 (the "**Fee Award**"). Williams was ordered to pay Van Der Beken's attorney's fees and costs within sixty days, so by August 19, 2024. *Id.* When Williams failed to do so by that deadline, Van Der Beken sought further relief in State Court in a motion filed on August 23, 2024, asking the State Court to find Williams and Phoenix in contempt of the Fee Award. Ex. 5.

During this period, Phoenix failed to file its 2023 and 2024 annual reports with the State of New Hampshire and to pay associated fees. Ex. 8. As a result, the company was administratively dissolved under state law as of September 1, 2024. Exs. 8 and 101. The Alleged Debtor had been administratively dissolved once before, in 2015, and was reinstated upon the payment of a fee and the filing of the missing annual report and other forms. Ex. 101. Phoenix intends to reinstate the company once again and has not done so to date on the advice of counsel.

The State Court held a hearing on October 25, 2024, and Williams represented through counsel that he lacked funds to pay either the Judgment or the Fee Award. Ex. 12. The State Court ordered Williams and Phoenix to pay Van Der Beken $3,750.00 by close of business on October 25, 2024, and to begin making "monthly payments in the amount $750 month commencing on 11/1/24 and continuing the first of every month thereafter, until the judgment

---

[1] Specifically, the State Court found that "Phoenix was unjustly enriched by receiving all of the MST swimmers' revenue from registration fees from 2019 through 2021 [which damage amount was $47,251.50], by receiving the benefit of the 'bulkhead' construction through the profits earned during the 2021 Summer swim meets at Raco [which totaled $12,815.50], and by receiving the full $10,000 COVID grant [so half of that, or $5,000.00 was owed to Van Der Beken]." Thus, the unjust enrichment damages total $65,067.00.

3

(and attorney[']s fees) is paid in full or until a further order of the Court." *Id.* (the "**Payment Order**"). The State Court also authorized Van Der Beken to conduct full financial discovery from Williams and Phoenix. *Id.*

On December 27, 2024, Van Der Beken filed a status report in State Court asserting that Williams "continue[s] to ignore, obfuscate and disregard legitimate discovery requests." Ex. 15. On January 10, 2025, Van Der Beken filed a motion in State Court requesting that Williams and Phoenix be required to escrow profits from upcoming swim meets. Ex. 18. That motion was denied on February 4, 2025. Ex. 19.

Meanwhile, on January 30, 2025, Van Der Beken filed the Involuntary Petition in this Court.[2] In it, he alleged that "[t]he debtor is generally not paying its debts as they become due, unless they are in the subject of a bona fide dispute as to liability or amount." ECF No. 1 at ¶ 11. He described his claim against the Alleged Debtor as consisting of court ordered damages of $243,212.00, attorney's fees of $58,603.00, interest of $32,673.00, plus attorney's fees, interest, and costs accruing since the State Court orders. *Id.* at ¶ 13. The Petitioning Creditor also filed a declaration in support of the Involuntary Petition wherein he stated that Phoenix "has less than 12 creditors." ECF No. 3 at ¶ 15. He further stated that he holds "a bona fide, non-contingent and indisputable, liquidated claim against Phoenix in excess of $329,238" and that he does not believe that he holds any perfected liens against Phoenix's property. *Id.* at ¶ 16.

Phoenix was served with a summons and a copy of the Involuntary Petition on February 4, 2025. ECF No. 7. The Alleged Debtor filed a response, which was not signed by counsel,[3]

---

[2]  The Court notes that the Involuntary Petition was signed by Van Der Beken and his counsel on December 20, 2024, more than a month before it was filed with this Court.

[3]  Local Bankruptcy Rule 9011-2 provides that limited liability companies may not proceed pro se and must appear through counsel in this Court.

opposing the Involuntary Petition and stating it has only two additional creditors who were owed approximately $12,000.00. ECF No. 9. Phoenix requested that the Involuntary Petition be dismissed pursuant to either 11 U.S.C. § 303(i) or 305(a). *Id.*

On March 4, 2025, the Petitioning Creditor filed a reply asking the Court to strike the Alleged Debtor's response as it was not signed by counsel, and he requested that the Court enter an order for relief against the Alleged Debtor. ECF No. 14. The Court declined to do so and instead held a preliminary hearing on the Involuntary Petition on March 5, 2025. Thereafter the Court scheduled an evidentiary hearing for March 18, 2025 to determine whether "the debtor is generally not paying such debtor's debts as such debts become due" within the meaning of 11 U.S.C. § 303(h)(1). ECF No. 16.

Before the evidentiary hearing, the Alleged Debtor filed a further answer and opposition to the Involuntary Petition signed by counsel. ECF No. 21. In it, the Alleged Debtor stated that it is generally paying its debts as they come due, noting that it is paying the Judgment in accordance with the Payment Order and that such payments are current. The Alleged Debtor stated it has one other debt, an American Express account on which it owed approximately $7,000.00.[4] Phoenix argued in its second answer that the Involuntary Petition was filed in bad faith, as a substitute for ordinary debt collection, and that the Petitioning Creditor has available to him state law remedies to enforce or modify enforcement of the Judgment.

The Petitioning Creditor filed a reply to the Alleged Debtor's second answer to the Involuntary Petition. ECF No. 27. He argued that Phoenix has just two creditors: himself, who he admitted is being paid in accordance with the terms of the Payment Order, and American

---

[4] Williams testified at trial that he offered to resolve this outstanding debt but learned that the account has been closed. According to Williams, the account had not been referred to collection nor was there ever any litigation concerning it.

5

Express, a debt that the Alleged Debtor admitted is in default. He contends that the Alleged Debtor is not paying its debts as they come due, and it is not liquidating its assets and winding up its affairs for his benefit and other creditors, as required by state law due to the administrative dissolution of the Alleged Debtor.

Phoenix filed a sur-reply on March 21, 2025, making three new arguments that: (1) Van Der Beken is not eligible to be a petitioning creditor because his claim is contingent and the subject of a bona fide dispute as to amount; (2) the administrative dissolution of the Alleged Debtor does not require Phoenix to wind down its business and liquidate its assets under state law; and (3) payments on the State Court debt in accordance with the Payment Order are payments on the debt within the meaning of 11 U.S.C. § 303(h). ECF No. 32.

On March 28, 2025, the Petitioning Creditor filed a response to the sur-reply arguing that: (1) Van Der Beken is eligible to be petitioning creditor because his claims are not contingent or the subject of a bona fide dispute as to amount; (2) the administrative dissolution of Phoenix requires it to liquidate its assets; and (3) the Alleged Debtor is not paying its debts in accordance with their terms, particularly, the Judgment and Fee Award. ECF No. 33.

While this case has been pending in the Bankruptcy Court, parallel proceedings have been taking in place in State Court. On March 10, 2025, the State Court held a status conference on the issue of "Payments and Discovery." Exs. 23 and 25. The State Court stayed its proceeding so that the parties could brief the issue of whether the filing of the Involuntary Petition operated to stay the State Court proceeding as to the Alleged Debtor and Williams. Ex. 23. Parties were given until March 31, 2025, and April 15, 2025, respectively, to file briefs on that issue. *Id.*

On March 18, 2025, this Court held a trial on the validity of the Involuntary Petition. The Alleged Debtor provided the Court with its bank account records with its one account reflecting

6

an ending balance of $9,738.30 as of January 31, 2025, the day after the Involuntary Petition was filed. Ex. 103. The January 2025 statement reflects receipts of $48,094.90 and withdrawals of $45,042.13, including a payment to Van Der Beken of $750.00 on January 1, 2025. *Id.*

Williams testified on behalf of the Alleged Debtor at the trial and presented evidence that in the period leading up to the involuntary bankruptcy filing on January 30, 2025, the Alleged Debtor was making routine payments to its employees, vendors, and trade creditors. During 2024, the Alleged Debtor paid more than $140,000.00 to the following organizations that provided pool time or other services to Phoenix and its swimmers:

> Cedardale Pool Rental
> Cedardale Strength
> Lawrence Boys and Girls Club[5]
> Charles River Aquatics
> North Shore Swim Club
> Seekonk Aquatics/CS
> Boston University Rental
> USA Swimming
> Manchester Swim Team
> YMCA North Shore
> UVAC

Ex. 109. Phoenix also paid its coaching staff $34,350.00, taxes totaling $6,020.74, USA registration fees of $12,509.00, website fees for Team Unify of $1,194.00, storage unit fees of $1,186.60, and travel expenses of nearly $24,000.00. Ex. 102. The Alleged Debtor also paid Van Der Beken $5,250.00. *Id.* These expenses for 2024 total more than $220,000.00. Exs. 102 and

---

[5] The Petitioning Creditor contends that the Alleged Debtor is not paying the Lawrence Boys and Girls Club (the "**LBGC**") for pool time by the dates on its invoices. *See* Exs.102 and 105. Williams testified that he gets intermittent invoices from the LBGC as they have a laissez faire attitude toward billing and collections. Phoenix pays the LBGC periodically in accordance with their fifteen-year business relationship, with a large fee being paid in January and then additional fees being paid during the summer months. Williams testified that if the LBGC were unhappy with Phoenix's payment schedule, the LBGC would discontinue its use of the pool, which they have not done to date. This Court finds Williams' testimony credible in this regard. Williams presented evidence showing that Phoenix made pool rental payments to the LBGC in January, April, June, July, August, and October of 2024. Ex. 102. These payments totaled $14,021.09.

109. During the thirteen-month period from October 2023 to October 2024, the Alleged Debtor's income was $226,452.48. Ex. 30. According to Phoenix, almost all its trade debt is current, and it is a solvent, profitable company. Williams testified that Phoenix is not facing any collection actions, there are no tax liens, and it has no judgment creditors other than Van Der Beken. In his view, Phoenix's assets are worth between $10,000.00 and $13,000.00. They are not being dissipated. According to Williams, the Alleged Debtor's most valuable asset is his and his head coach's involvement in the company.

Van Der Beken also testified at the trial on March 18, 2025. When he was asked whether there were any other creditors of the Alleged Debtor who were not being paid, he said he believed "there could be" and that it "may be too soon" to determine that. He was unable to name any specific creditors other than himself, American Express, and the LBGC. He stated that he did not think he was the only creditor when he filed the Involuntary Petition. Van Der Beken testified that Phoenix's assets are worth between $20,000.00 and $25,000.00.

## III. DISCUSSION

"The Bankruptcy Code and the Bankruptcy Rules specifically permit an alleged debtor to contest an involuntary petition." *In re HH Tech. Corp.,* 659 B.R. 788, 801 (B.A.P. 1st Cir. 2024). Bankruptcy Rule 1013(a) requires the Court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Fed. R. Bankr. P. 1013(a). "The filing of an involuntary petition by a creditor must be carefully scrutinized by the Court because such an action is extreme in nature and carries with it serious consequences to the alleged debtor, examples of which include loss of credit standing, interference with general business affairs and public embarrassment." *In re McDonald Trucking Co., Inc.*, 76 B.R. 513, 516 (Bankr. W.D. Pa. 1987); *see In re Betteroads*

*Asphalt, LLC*, 596 B.R. 516, 548 (Bankr. D.P.R. 2018) (stating that "the filing of an involuntary petition is an extreme remedy with very serious consequences to the involuntary debtor"); *In re SBA Factors of Miami,* 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981) (cited in *In re Godroy Wholesale Co., Inc.,* 37 B.R. 496, 499 (Bankr. D. Mass. 1984)). Courts have acknowledged that the Bankruptcy Code "was created by Congress to act as a shield for debtors, rather than as a sword for creditors." *In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995). Some courts regard the filing an involuntary petition without first pursuing non-bankruptcy collection remedies an improper use of the Bankruptcy Code. *See In re Gen. Aeronautics Corp.*, 594 B.R. 442, 476 (Bankr. D. Utah 2018). With these principles in mind, the Court must determine the validity of the Involuntary Petition.

As an initial matter, the Court must decide whether the Petitioning Creditor has standing to commence an involuntary case against the Alleged Debtor. *See In re Vitaminspice*, 472 B.R. 282, 290 (Bankr. E.D. Pa. 2012). The Petitioning Creditor has the burden of proving all statutory requirements of 11 U.S.C. § 303, including that his claims are not contingent or the subject of a bona fide dispute and that the Alleged Debtor is generally not paying its debts as they become due. *See Dilley v. Dilley (In re Dilley)*, 339 B.R. 1, 6 (B.A.P. 1st Cir. 2006); *Efron v. Guitierrez*, 226 B.R. 305, 312 (D.P.R. 1998); *Boston Beverage Corp. v. Turner*, 81 B.R. 738, 741 (D. Mass. 1987); *In re Pivar*, Case No. 23-10938 (JLG), 2024 WL 823035, at *8 (Bankr. S.D.N.Y. Feb. 27, 2024) (citing *In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463 (Bankr. S.D.N.Y. 2007)); *Betteroads Asphalt*, 596 B.R. at 547. The Bankruptcy Code provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such

9

noncontingent, undisputed claims aggregate at least $18,600 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $18,600 of such claims.

11 U.S.C. § 303(b); *see Efron*, 226 B.R. at 313. The Alleged Debtor has stated that it has fewer than twelve creditors.[6] Accordingly, an involuntary petition could be filed by just one claim holder, so long as the claim is not "contingent as to liability" or "the subject of a bona fide dispute as to liability or amount." At trial, the Alleged Debtor raised issues as to whether the Petitioning Creditor holds a contingent claim and whether his claim is subject to a bona fide dispute as to amount.

The Judgment provides *Williams* owes Van Der Beken $243,212.00 in damages and that *Phoenix* would be responsible for a subset of these damages in the amount of $65,067.00, as set forth in footnote 1 of this opinion, if not paid by Williams. The Judgment further provided that because "Williams is the sole owner of Phoenix and he uses the Phoenix bank account as his personal account, all damages owed by him to Van Der Beken may be paid from the Phoenix bank account." Further, the Payment Order indicates "the defendants" owe a judgment in the amount of $265,212.00 and attorney's fees in the amount of $58,603.48. The State Court also ordered "the defendants" to make the $3,750.00 payment on October 25, 2024, and ongoing

---

[6] In the Court's view, it is unclear whether there were fewer than twelve entities who held claims against the Alleged Debtor on the petition date. The exhibits and testimony at trial reflect that the Alleged Debtor paid at least eleven entities for pool time and other services in 2024, that the Alleged Debtor has several coaches including Williams, Lori Paszko, and some assistant coaches who get paid salaries, that the Alleged Debtor pays taxes, website fees, travel expenses, and storage fees. Ex. 109. Neither party presented evidence as to which of these entities may have been owed money as of January 30, 2025. For purposes of ruling on the validity of the Involuntary Petition, the Court will assume without deciding that there were fewer than twelve entities who held claims on the petition date making 11 U.S.C. § 303(b)(2) the relevant provision that the Petitioning Creditor must satisfy.

payments of $750.00 starting November 1, 2024. For purposes of this proceeding, based on the terms of the Judgment and the Payment Order, the Court will treat the Petitioning Creditor's claims, i.e., the $65,067.00 unjust enrichment damages[7] and the $58,603.48 for attorney's fees and costs, as not contingent and as not subject to a bona fide dispute as to amount.[8] The Petitioning Creditor's claims total at least $18,600.00 more than the value of his liens on the Alleged Debtor's property.[9] Accordingly, the Court finds that the Petitioning Creditor satisfied the requirements of 11 U.S.C. § 303(b)(2) and had standing to file the Involuntary Petition.

Next, because the Alleged Debtor timely controverted the Involuntary Petition, the Court must determine whether the Alleged Debtor "is generally not paying such debtor's debts as such debts become due" within the meaning of the Bankruptcy Code, which provides in relevant part:

> If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount.

---

[7] *See Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 11 (1st Cir. 2016) ("[A] petitioning creditor may be permitted to rely on an undisputed component claim that underlies a disputed multi-part judgment that the creditor has asserted as its qualifying claim where the amount of that undisputed claim is clearly severable from the amount of the total judgment and where the debtor both has notice of that reliance and is not prejudiced by that reliance.").

[8] It is undisputed that neither the Judgment nor the Fee Award have been appealed and therefore are final and immune from collateral attack in this proceeding pursuant to the *Rooker-Feldman* doctrine. "The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts. *See* 263 U.S. at 415-16, 44 S.Ct. 149. *Feldman* held that this jurisdictional bar extends to particular claims that are 'inextricably intertwined' with those a state court has already decided. *See* 460 U.S. at 486–87, 103 S.Ct. 1303." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 403 n.7 (B.A.P. 1st Cir. 2004).

[9] While the Petitioning Creditor obtained a writ of attachment and trustee process against Williams and the Alleged Debtor in June 2023, the Petitioning Creditor contends he never received any money based on the attachment and that the attachment is not reflected in the lien records of the State of New Hampshire. Exs. 14 and 106.

11 U.S.C. § 303(h)(1). As noted previously, the Petitioning Creditor has the burden of proving that the Alleged Debtor is generally not paying its bills on time. *Pivar*, 2024 WL 823035, at *8; *see Efron*, 226 B.R. at 312; *Boston Beverage Corp.*, 81 B.R. at 741; *Betteroads Asphalt*, 596 B.R. at 547.

"The 'generally not paying' test is determined as of the date of the involuntary petition." *Betteroads Asphalt*, 594 B.R at 547; *Gen. Aeronautics*, 594 B.R. at 470. The Involuntary Petition was filed on January 30, 2025, and so that is the operative date. The Bankruptcy Code does not set forth a specific standard for determining whether an alleged debtor is generally not paying its debts. As a result, there is a "a wide range of definitions and interpretations amongst courts of this particular standard." *Betteroads Asphalt*, 594 B.R at 548. The First Circuit Court of Appeals has not established a specific standard. *Id.* Instead, most courts have adopted a flexible "totality of the circumstances" test in deciding whether a debtor is generally not pay its debts as of the petition date. *Id.* Further, the "generally not paying standard" is not a balance-sheet insolvency test or an "equity-insolvency" standard that considers whether the debtor *can* pay its debts, not whether it *is* paying its debts. *Id*. Rather, the "generally not paying standard" begins with questioning how many debts are being paid in proportion to the total number of debts. *Id*.

While failing to pay one significant creditor can satisfy the standard, there are several factors that courts have consistently applied to determine whether the "generally not paying standard" is satisfied such as: (i) the number and amount of unpaid debts in default compared to current debts; (ii) the amount of delinquency of debt; (iii) the length of time of delinquencies; (iv) the materiality of nonpayment; (v) the nature of the debtor's conduct of its financial affairs; and (vi) the number and dollar amount of debts in default. *Id.* (citing Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., *Bankruptcy Law Manual*, § 14.15 (5th ed.

12

2018); *Crown Heights Jewish Cmty. Council Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 350 (E.D.N.Y. 1996); *Perez v. Feinberg (In re Feinberg),* 238 B.R. 781, 783 (B.A.P. 8th Cir. 1999) (vacated Dec. 16, 1999); *Murrin v. Hanson (In re Murrin)*, 477 B.R. 99, 106-107 (Bankr. D. Minn. 2012); *In re Mikkelson*, 499 B.R. 683, 689 (Bankr. D.N.D. 2013)). The test considers the totality of the circumstances, and there is no requirement for this Court to address each and every factor. *Betteroads Asphalt*, 596 B.R. at 548 (citing *Murrin*, 477 B.R. at 107). To satisfy his burden, the Petitioning Creditor must make "a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts." *Betteroads Asphalt*, 594 B.R at 547 (quoting *Liberty Tool & Mfg., Inc. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057,1072 (9th Cir. 2002); *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1504 n.41 (11th Cir. 1997)).

The Court must look to the pattern of payments made by Phoenix before the Involuntary Petition was filed to get an accurate picture of Phoenix's financial condition. *Boston Beverage*, 81 BR. at 748. Phoenix presented an exhibit at trial that reflected that it made more than $220,000.00 in payments during 2024 to its various employees, vendors, and creditors, who by the Court's calculation likely total more than twenty in number. Phoenix paid (1) organizations that provided pool time or other services to Phoenix and its swimmers, (2) its coaching staff, (3) taxing entities, (4) USA Swimming, (5) Team Unify, (6) a storage company, (7) travel expenses, and (8) Van Der Beken. This evidence demonstrates that Phoenix has a good track record of generally paying its debts in the ordinary course of its business prior to the filing of the Involuntary Petition. Phoenix contends that almost all its trade debt is current and that it is a solvent, profitable company.

13

The Petitioning Creditor provided limited evidence with regard to Phoenix's creditors or the amounts owed to them. He established that Phoenix has three unpaid debts, the amount Phoenix owes on the Judgment, the Fee Award, and the American Express debt. These total $135,670.48.[10] He testified that he believed "there could be" other creditors but that it "may be too soon" to determine that. He was unable to name any specific creditors other than himself, American Express, and the LBGC.[11] The evidence regarding the American Express debt was limited, but Williams testified that American Express closed the account and was currently unwilling to accept payments, and that it does not have a pending collection action.

The Judgment and the Fee Award have been outstanding since June and August 2024, respectively. The amounts owed to Van Der Beken are large and material. Phoenix and Williams did not make any payments on these obligations prior to Van Der Beken filing a motion for contempt in the State Court. Once the State Court issued the Payment Order on October 25, 2024, Phoenix commenced making payments in accordance with that order. Phoenix paid Van Der Beken $3,750.00 by close of business on October 25, 2024. Phoenix then began making monthly payments of $750.00 on the first of the month starting November 1, 2024. As of the date of trial, it appears that Phoenix was in compliance with the Payment Order and paid Van Der Beken $7,500.00. It also appears that the Alleged Debtor is unable to pay the Judgment and Fee Award, in full, from its ongoing operations and money on hand but rather is only able to make periodic payments as set forth in the Payment Order. Most of the Alleged Debtor's unpaid debts consist of the claims of the Petitioning Creditor, who has not been paid in full, while other non-

---

[10] $65,067.00 + $58,603.48 + $7,000.00.

[11] The Court found Williams' testimony regarding payment of the LBGC pool rental fees to be credible, and therefore the Court does not find that this debt was not being paid as it came due in 2024.

petitioning creditors are being paid as their debts become due. Nonetheless, as of the petition date, Phoenix was making the monthly payments on the large debts owed to the Petitioning Creditor in accordance with the Payment Order.

There are other factors the Court will consider in making its determination under 11 U.S.C. § 303(h)(1). The Petitioning Creditor did not present any evidence that the Alleged Debtor has been liquidating or dissipating its assets, that the value of Phoenix's assets has declined, or that Phoenix has shut down its business operations, all of which might suggest that the Debtor has no ability or intention to pay its debts as they come due. Further, there are no pending collection actions, except Van Der Beken's suit; pending litigation would demonstrate that Phoenix is not paying its creditors. The Petitioning Creditor presented no evidence that the Alleged Debtor has any insider loans or that Phoenix's obligations are being paid by third parties. The Petitioning Creditor has not presented any evidence that the Alleged Debtor has attempted to defraud its creditors. *See Boston Beverage*, 81 B.R. at 749.

When comparing the number of unpaid debts to the number of paid debts, the Court finds that the Alleged Debtor is paying almost all its debts as they become due. When comparing the amount of the unpaid debts to the amounts of the paid debt, the Court finds that the unpaid debts are more than half the amount the Alleged Debtor paid for operating expenses in 2024 ($135,670.48 vs. $220,000.00) so the amount of the unpaid debts is large. The issue for the Court is whether the failure to pay the Alleged Debtor's one significant creditor in full (instead of by making small monthly payments as ordered by the State Court) is enough for the Court to conclude that the Alleged Debtor is "generally not paying" its debt based on the totality of the circumstances. The Court finds that it is not. The Alleged Debtor has not missed a significant number of payments to creditors, and it has not missed any payments owed to the Petitioning

15

Creditor under the Payment Order. *See All Media Properties*, 5 B.R. 126, 143 (Bankr. S.D. Tex. 1980), *aff'd*, 646 F.3d 193 (5th Cir. 1981) (quoted in *Boston Beverage*, 81 B.R. at 749). Accordingly, the Petitioning Creditor has failed to meet its burden under 11 U.S.C. § 303(h)(1) of establishing, as of January 30, 2025, that the Alleged Debtor was generally not paying its debts as they become due. The Petitioning Creditor has not convinced the Court that the Alleged Debtor has conducted its affairs in a manner that would justify affording its creditors the protection of a chapter 11 bankruptcy proceeding.

The Petitioning Creditor acknowledged at trial that the filing of the Involuntary Petition was motivated by his desire to force a liquidation of the company. However, the Petitioning Creditor also acknowledged that he has remedies he can pursue in State Court. Specifically, he can enforce the Judgment and the Fee Award in State Court by attaching, levying on, or selling at a sheriff's sale the Alleged Debtor's non-exempt assets. ECF No. 14 at ¶¶ 16, 24; ECF No. 33 at ¶ 27. He can also seek a periodic payment order in accordance with New Hampshire state law. ECF No. 26 at ¶ 26. In addition, the Petitioning Creditor can pursue collection directly from Williams, who the State Court found liable for damages in the amount of $243,212.00.

Having determined that the Alleged Debtor was generally paying its debts as they became due on the petition date, the Court will dismiss the Involuntary Petition.[12] Section 303 of

---

[12] The Court notes further that 11 U.S.C. § 305(a)(1) provides that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if … the interests of creditors and the debtor would be better served by such dismissal or suspension." "Factors to consider in dismissal under § 305(a)(1) include: (1) the purpose of the bankruptcy, (2) availability of a more appropriate forum to decide the unsettled issues, (3) efficiency and economy of administration, and (4) the interest of the creditors and debtor." *In re Seff Enters. & Holdings, LLC*, No. 09-13568-MWV, 2010 WL 7326760, at *2 (Bankr. D.N.H. Feb. 26, 2010) (citing *In re Deacon Plastics Mach., Inc.*, 49 B.R. 982, 982 (Bankr. D. Mass. 1985); *In re Nesenkeag, Inc.*, 131 B.R. 246, 247 (Bankr. D.N.H. 1991)). Here, the Court finds that the Alleged Debtor is an operating entity (whose administrative dissolution can be easily remedied in short order) that is generally paying its obligations as they come due and that the sole purpose of this bankruptcy case is to force a liquidation or sale of the business so that the Petitioning Creditor can receive payment on his Judgment and the Fee Award. There are no other creditors (except for a closed credit card account) who are going unpaid by the Alleged Debtor. The

16

the Bankruptcy Code "governs involuntary bankruptcy petitions and, among other things, gives involuntary debtors an avenue to seek attorney's fees, costs, and other damages related to dismissed petitions." *Reyes-Colon v. Banco Popular De Puerto Rico*, 110 F.4th 54, 60 (1st Cir. 2024). The Alleged Debtor has requested that it be awarded fees, costs, and damages as permitted by the Bankruptcy Code:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
> (A) costs; or
> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

11 U.S.C. § 303(i). The First Circuit Court of Appeals has explained that 11 U.S.C. § 303(i) is a classic fee-shifting statute, which shifts the costs of litigation as a whole from the alleged debtor to the creditor that improperly files a bankruptcy petition. *Reyes-Colon,* 110 F.4th at 67 (1st Cir. 2024) (citing *In re Rosenberg*, 779 F.3d 1254, 1266 (11th Cir. 2015)).

> The award of costs and fees is permissive and properly within the discretion of the court. *In re K.P. Enterprise,* 135 B.R. 174, 177 (Bankr. D. Me. 1992) (citing *In re Reid,* 854 F.2d 156, 159 (7th Cir.1988); *In re Nordbrock,* 772 F.2d 397, 400 (8th Cir.1985); *In re Better Care, Ltd.,* 97 B.R. 405, 410 (Bankr. N.D. Ill. 1989)). Bad faith is not a prerequisite to the award of costs and fees under § 303(i)(1) although it can be a factor in deciding to award fees and costs. *In re Mountain Dairies, Inc.,* 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007). "Courts generally hold that the exercise of the court's discretion is based

---

Alleged Debtor does not want to be in bankruptcy. There is no efficiency or economy of administration by forcing the Alleged Debtor to prosecute a chapter 11 bankruptcy case. Instead, the Court sees this as a two-party dispute between parties who are already proceeding in State Court. The Petitioning Creditor has acknowledged that he is free to pursue collection in accordance with New Hampshire state law, including seeking the issuance of a writ of execution pursuant to NH RSA 527:1 or a periodic payment order pursuant to NH RSA 524:6-a. In the Court's view, the State Court is a more appropriate forum to deal with issues concerning payment of the Judgment and the Fee Award, in the absence of other creditor issues. For those reasons the Court finds that abstention offers an alternative basis to dismiss the Involuntary Petition.

on the totality of the circumstances; that there is a presumption that costs and attorney's fees will be awarded to the alleged debtor following dismissal of an involuntary petition; and that the burden of proof is on the petitioner to justify a denial of costs and fees." *In re Squillante,* 259 B.R. 548, 553-54 (Bankr. D. Conn. 2001).

*Banco Popular De Puerto Rico v. Colon (In re Colon)*, Nos. PR 07-053, 06-04675-GAC, 2008 WL 8664760, at *9 (B.A.P. 1st Cir. Nov. 21, 2008) (footnotes omitted). The Court's discretion should be informed by factors such as "the reasonableness of the petitioners' actions, their motivation and objectives, and the merits of their view that the petition was proper and sustainable." *Hancock v. Blair House Assocs. Ltd.,* No. 2:22-cv-00099-JDL, No. 2:22-cv-00194-JDL, 2023 WL 2743641, at *11 (D. Me. Mar. 31, 2023) (quoting *In re K.P. Enterprise*, 135 B.R. 174, 177 (Bankr. D. Me. 1992)).

The State Court noted in its order dated October 24, 2024 that Williams represented through counsel that he lacked funds to pay all of the amounts owing to the Petitioning Creditor, but failed to produce any supporting documentation. Ex. 12. On December 27, 2024, Van Der Beken filed a status report in State Court asserting that Williams "continue[s] to ignore, obfuscate and disregard legitimate discovery requests." Ex. 15. While Williams later produced bank statements to the Petitioning Creditor, it appears that many of the documents relied on by the Petitioning Creditor at trial were not produced until shortly before the trial in this case.

As reflected herein, this Court reached its decision in this case by carefully analyzing the testimony and documentary evidence produced, much of which was not available to Petitioning Creditor prior to commencing this case. This Court does not believe, under the totality of the circumstances, that the Petitioner was unreasonable in filing this case or that he lacked merit in his view that the petition was proper and sustainable. This Court will therefore exercise its discretion and not award fees, costs or damages to Phoenix.

**IV.  CONCLUSION**

  For the reasons set forth above, the Court will dismiss the Involuntary Petition as Phoenix is generally paying its debts as they become due. The Court will not award fees, costs, or damages. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

Date: April 4, 2025　　　　　　　　　　　/s/ Kimberly Bacher
　　　　　　　　　　　　　　　　　　　　Kimberly Bacher
　　　　　　　　　　　　　　　　　　　　Chief Bankruptcy Judge